Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| YARILIS M. FONTÁN PÉREZ<br><br>Apelada<br><br>v.<br><br>DR. JACA MONTIJO, C.S.P.<br><br>Apelante | KLAN202200850 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2019CV02939<br><br>Sobre: Despido Injustificado Ley Núm. 80 y otros |

Panel integrado por su presidenta la Jueza Romero García, la Jueza Martínez Cordero y el Juez Rivera Colón.[1]

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de enero de 2024.

Comparece el Dr. Jaca Montijo, C.S.P. (en adelante, parte apelante y/o Montijo, C.S.P.) mediante un recurso de *Apelación*, para solicitar la revisión de los siguientes tres (3) dictámenes emitidos por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI).

En *primer* lugar, la parte apelante nos solicita la revisión de la *Sentencia* emitida y notificada el 14 de octubre de 2022.[2] Mediante la *Sentencia* apelada, el foro primario, declaró Ha Lugar la acción por represalias, así como la reclamación por vacaciones acumuladas y no liquidadas presentadas por la señora Yarilis M. Fontán Pérez (en adelante, señora Fontán Pérez y/o apelada). En virtud de lo anterior, el Tribunal a *quo* ordenó a la parte apelante a pagar a la

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Abelardo Bermúdez Torres, y la Orden Administrativa OATA-2023-040 del 1 de marzo de 2023, en la que se asigna al Hon. Felipe Rivera Colón en sustitución de la Jueza Méndez Miró por esta haber dejado de ejercer sus funciones como Jueza del Tribunal de Apelaciones.
[2] Apéndice de la parte apelante, a las págs. 266-280.

apelada la suma de $40,000.00 dólares por daños y angustias mentales, más $40,000.00 dólares, por concepto de penalidad al amparo de la Ley Núm. 115-1991,[3] para un total de $80,000.00 dólares. También se ordenó a la parte apelante a pagar a la apelada $3,000.00 dólares, desglosados de la siguiente manera: $1,500.00 dólares por vacaciones acumuladas y no pagadas, más una cantidad igual por penalidad, al amparo de la Ley Núm. 180-1998.[4] Además, se ordenó a la parte apelante a pagar el veinticinco por ciento (25%), del total concedido, por concepto de honorarios de abogado.

En *segundo* lugar, nos solicita la revisión de la *Orden* emitida el 10 de marzo de 2020, notificada el 11 de marzo de 2020.[5] Mediante esta *Orden*, el Tribunal *a quo* eliminó las alegaciones de la parte apelante al amparo de la Regla 34.3 (b)(3) de las Reglas de Procedimiento Civil.[6]

En *tercer* y último lugar, la parte apelante nos solicita la revisión de la *Sentencia Parcial* emitida y notificada el 7 de mayo de 2020.[7] Mediante esta *Sentencia Parcial*, el TPI declaró Ha Lugar una *Solicitud de Sentencia Sumaria Parcial* presentada por la señora Fontán Pérez y, en consecuencia, ordenó a la parte apelante a pagar la suma de $15,923.08 dólares, por concepto de mesada, a tenor con la Ley Núm. 80-1976,[8] en un término de treinta (30) días y al pago de $2,076.92 dólares, por concepto de los ingresos dejados de percibir a raíz del despido injustificado. Además, condenó a la parte apelante a pagar el veinticinco por ciento (25%) de la suma impuesta, por concepto de honorarios de abogado, en conexión a los

---

[3] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

[4] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

[5] Apéndice de la parte apelante a la pág. 84.

[6] 32 LPRA Ap. V, R. 34.3 (b)(3).

[7] Apéndice de la parte apelante a las págs. 93-100. Véase además el Sistema Unificado de Manejo y Administración de Casos (en adelante, SUMAC) a la entrada 28.

[8] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*

salarios dejados de devengar y la penalidad en cuanto al despido sin justa causa de la señora Fontán Pérez, equivalente a $4,500.00 dólares además del pago de las costas incurridas, aplicándose a todo lo anterior el pago de intereses al tipo legal.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada. Con relación a la *Sentencia Parcial* notificada el 7 de mayo de 2020 y la *Orden* notificada el 11 de marzo de 2020, resolvemos que no tenemos jurisdicción.

**I**

El 30 de mayo de 2019, la señora Fontán Pérez presentó una *Querella* contra la parte apelante por despido injustificado.[9] La *Querella* fue presentada al amparo de la Ley Núm. 2-1961.[10] La señora Fontán Pérez alegó que comenzó a laborar para Montijo, C.S.P. el 13 de junio de 2013, como empleada contratada sin término determinado. Alegó haber estado trabajando ininterrumpidamente por un término no menor de cinco (5) años. Adujo haber sido víctima de un despido injustificado y represalias por la parte apelante. A tenor con lo anterior, solicitó remedios al amparo de la Ley Núm. 45-1935, según enmendada,[11] Ley Núm. 80-1976, según enmendada,[12] Ley Núm. 115-1991, según enmendada,[13] Ley Núm. 180-1998, según enmendada,[14] y la Ley Núm. 379-1948, según enmendada.[15]

---

[9] Apéndice de la parte apelante, a las págs. 24-34.

[10] Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA § 3118 *et seq.*

[11] Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA § 1 *et seq.*

[12] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*

[13] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

[14] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

[15] Ley para Establecer la Jornada de Trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 LPRA § 271 *et seq.*

Por su parte, el 24 de junio de 2019, la parte apelante presentó la *Contestación a la Querella.*[16] La parte apelante alegó que la señora Fontán Pérez fue despedida mediando justa causa por las siguientes razones: (i) incumplió reiteradamente con sus deberes y responsabilidades; (ii) ausentismos excesivos luego de agotar las licencias que tenía; (iii) abandono de las facilidades y de sus responsabilidades; (iv) quejas recibidas por mala atención a los pacientes; (v) no cobrar, en ocasiones, las deudas de los pacientes que le aparecían en el sistema; (vi) no requerir, en ocasiones, el referido necesario para poder facturar los servicios brindados; (vii) duplicar pagos en el sistema; y, (viii) cobrar cantidades incorrectas de algunos de los deducibles de estudios.

Luego de varios incidentes procesales, innecesarios pormenorizar, el foro primario emitió el *segundo* dictamen objeto de revisión en el recurso de autos, entiéndase, una *Orden* emitida el 10 de marzo de 2020, y notificada el 11 de marzo de 2020.[17] En ella, el Tribunal *a quo* dispuso: "Dado su reiterado incumplimiento con las órdenes del tribunal, se eliminan las alegaciones de la parte querellada. Notif[í]quese a la parte querellada".[18]

Luego, el 23 de marzo de 2020, la señora Fontán Pérez presentó una *Solicitud de Sentencia Parcial a Tenor con la Regla 10.3 de Procedimiento Civil.*[19] En respuesta, el 7 de mayo de 2020, el TPI emitió el *tercer* dictamen objeto de revisión en el recurso de autos, es decir, la *Sentencia Parcial* emitida y notificada el 7 de mayo de 2020.[20] Concluyó que, Montijo, C.S.P. no tuvo causa justificada para despedir a la señora Fontán Pérez, en abierta contravención a

---

[16] Apéndice de la parte apelante, a las págs. 36-42.
[17] *Id.*, a la pág. 84.
[18] *Id.*
[19] Apéndice de la parte apelante, a las págs. 85-90. 32 LPRA Ap. V, R. 10.3.
[20] Apéndice de la parte apelante, a las págs. 93-100. Véase, además, SUMAC a la entrada 28.

la Ley Núm. 80-1976.[21] En ella, el TPI declaró Con Lugar la solicitud presentada y en consecuencia ordenó a la parte apelante a que en el término de treinta (30) días: (i) pagar a la señora Fontán Pérez una mesada por la cantidad de $15,923.08 dólares de acuerdo con la Ley Núm. 80-1976[22] consistente en tres (3) meses de salario y dos (2) semanas por cada año de servicio; (ii) el pago de $2,076.92 dólares por concepto de los ingresos dejados de percibir por un periodo de al menos tres (3) semanas a raíz del despido injustificado; (iii) el pago de honorarios de abogado en un veinticinco por ciento (25%) de la suma impuesta en conexión a los salarios dejados de devengar; (iv) la penalidad en cuanto al despido sin causa justificada, equivalente a $4,500.00 dólares; y, (iv) el pago de costas incurridas, aplicándose a todo lo anterior el pago de intereses de tipo legal.

Como parte de la *Sentencia Parcial* emitida, la primera instancia judicial emitió las siguientes nueve (9) determinaciones de hechos, las cuales transcribimos *in extenso:*

1. Dr. Jaca Montijo, C.S.P. es una corporación profesional con fines de lucro y autorizada a hacer negocios en Puerto Rico.
2. La Sra. Fontán comenzó a laborar para Dr. Jaca Montijo, C.S.P. el 13 de junio de 2013, como empleada contratada por tiempo indeterminado.
3. A la fecha de su despido, la Sra. Fontán ocupaba la posición de Supervisora Administrativa con responsabilidades que incluían mantener "citario" a capacidad, atender llamadas y las operaciones de la oficina.
4. La supervisora inmediata de la Sra. Fontán lo era la Sra. Lizmarie Burgos, esposa del Dr. Ignacio Jaca Montijo.
5. La Sra. Fontán trabajaba una jornada regular de lunes a viernes, en un horario de 5:30 a.m. a 2:30 p.m., recibía su compensación bi-semanalmente mediante cheques, y con regularidad le era exigido trabajar en exceso a su jornada para atender las necesidades personales de sus supervisores.
6. El 28 de diciembre de 2018, Dr. Jaca Montijo, C.S.P. le envió un mensaje de texto informando su despido con efectividad inmediata, sin ofrecer una causa justificada.

---

[21] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*
[22] *Id.*

7. La Sra. Fontán trabajó cinco (5) años y seis (6) meses para Dr. Jaca Montijo, C.S.P.

8. El salario anual más alto de la Sra. Fontán durante los últimos tres (3) años de empleo fue de $36,000.00, equivalentes a $692.31 semanales.

9. A raíz de su despido, la Sra. Fontán estuvo desempleada por un periodo no menor de tres (3) semanas durante el cual dejó de percibir ingresos.[23]

Inconforme con la *Sentencia Parcial* emitida, la parte apelante presentó un *primer* recurso de *Certiorari* ante este Tribunal, el alfanumérico KLCE202000895.[24] Allí, solicitó que se revisara la negativa del foro primario a reconsiderar la eliminación de las alegaciones, es decir, la *Orden* emitida el 10 marzo de 2020, notificada al día siguiente, y que, según adelantamos, constituye el *segundo* dictamen del cual se solicita la revisión en el recurso ante nos. Además, solicitó la revisión de la *Sentencia Parcial* emitida y notificada el 7 de mayo de 2020, y que, tal y cual hemos expuesto, constituye el *tercer* dictamen del cual se solicita la revisión en el caso ante nos. Mediante *Resolución* emitida por un Panel hermano el 30 de octubre de 2020,[25] este Tribunal desestimó el recurso KLCE202000895, por falta de jurisdicción. Inconforme con lo resuelto, la parte apelante acudió al alto foro, donde nuevamente, se denegó el recurso instado, por falta de jurisdicción.[26]

Regresando a los trámites ante el TPI, el 5 de mayo de 2021, la parte apelante presentó una *Urgente Moción para Dejar sin Efecto Órdenes bajo la Regla 34, Sentencia Parcial, y de Ejecución de Sentencia Debido a que Adolecen de Nulidad.*[27] La apelada presentó su oposición el 18 de mayo de 2021. En respuesta, ese mismo día y notificada el 19 de mayo de 2021, el Tribunal *a quo* dispuso No Ha Lugar a la solicitud de la parte apelante.[28]

---

[23] Apéndice de la parte apelante a la pág. 96.
[24] *Id.,* a las págs. 1-23.
[25] *Id.,* a las págs. 149-157.
[26] En el caso CC-2020-0664. Véase expediente judicial ante el TPI en el SUMAC, a la entrada 84.
[27] Véase SUMAC, a la entrada 56.
[28] Véase SUMAC, a la entrada 62.

Por otro lado, el 13 de mayo de 2021, la parte apelante presentó una *Urgente Moción para Dejar sin Efecto Órdenes de Ejecución de Sentencia y Mandamientos ante la Cantidad Depositada en el Tribunal y al Haberse Afianzado el Restante Balance.*[29] Allí, solicitó al foro primario que: (i) dejara sin efecto la orden de ejecución y mandamientos notificados; (ii) que relevara a las partes que fueron notificadas del mandamiento de embargo en cuanto a su cumplimiento y ordenara al depositario y a la oficina de alguaciles a cesar esfuerzos para ejecutar la *Sentencia Parcial*; y, (iii) que ordenara a restituir y devolver a su origen todos los fondos embargados que no hubiesen sido depositados para mitigar los daños causados y que se continuaban causando presuntamente a esta parte. La apelada presentó su oposición. En respuesta, mediante *Orden* emitida y notificada el 19 de mayo de 2021, el TPI dispuso "[v]er orden 18 mayo 2021".[30]

Inconforme con lo resuelto por el TPI, la parte apelante presentó un *segundo* recurso de *Certiorari* ante este Tribunal, el alfanumérico KLCE202100640, el cual también fue desestimado por falta de jurisdicción, tras haberse presentado tardíamente. Según se desprende de la *Resolución* emitida por un Panel hermano el 28 de mayo de 2021, en el alfanumérico KLCE202100640,[31] los señalamientos de error esgrimidos por el peticionario "son un ataque a la sentencia dictada el 7 de mayo de 2021".[32] Dispuso, además:

> El ataque [de la parte apelante] a la sentencia parcial es tardí[o] porque presentó el recurso vencido el término jurisdiccional de 10 días para apelar una sentencia dictada por el TPI al amparo de la Ley Núm. 2[-1961].[33] El patrono no apeló a tiempo la sentencia y optó por solicitar reconsideración de esta sentencia, de la eliminación de las alegaciones y de las sanciones impuestas. El TPI denegó la reconsideración. [La parte apelante] acudió al Tribunal de Apelaciones. Este foro

---

[29] Véase SUMAC a la entrada 60.
[30] *Id.,* a la entrada 64.
[31] *Id.,* a la entrada 97.
[32] *Id.,* a la entrada 97.
[33] Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA § 3118 *et seq.*

desestimó el recurso por falta de jurisdicción [. . .] De modo que el peticionario agotó el procedimiento de revisión disponible.

Sin embargo, el patrono insiste en cuestionar la sentencia, la eliminación de sus alegaciones y las sanciones impuestas.[34]

Siguiendo las incidencias procesales ante el TPI, el 30 de marzo de 2022, la parte apelante presentó una *Petición de Nulidad y Relevo de Sentencia*,[35] en torno a la *Sentencia Parcial* emitida el 7 de mayo de 2020, luego de haber eliminado las alegaciones a la parte apelante. Alegó que las notificaciones hechas en torno al descubrimiento de prueba habían sido enviadas a una dirección que no era la suya. Añadió que, el Tribunal debió haberle notificado a su dirección correcta un apercibimiento de las consecuencias de no contestar el interrogatorio sometido. El foro primario denegó la solicitud instada por la parte apelante mediante *Minuta-Resolución* emitida el 11 de abril de 2022, y notificada al día siguiente.[36]

De ahí, el 10 de junio de 2022, se celebró vista la para determinar los daños reclamados por la apelada.[37] Previo al inicio del desfile de la prueba, la parte apelante presentó argumentos en torno a la sanción sobre eliminación de alegaciones recibida previo a que se dictara la *Sentencia Parcial*, a lo que el TPI consignó su objeción y continuó los procedimientos. Hacemos la salvedad que, en esa misma fecha, la señora Fontán Pérez renunció a su reclamación de alimentos bajo la Ley Núm. 379-1948.[38]

La prueba testifical de la apelada consistió en los testimonios de esta,[39] y del doctor Fernando Cabrera Delgado (en adelante doctor Cabrera y/o perito),[40] quien fue cualificado como perito de la

---

[34] Véase SUMAC, a la entrada 97.
[35] Apéndice de la parte apelante, a las págs. 224-233.
[36] *Id.*, a las págs. 248-251.
[37] *Id.*, a las págs. 258-265. *Minuta* de la vista del 10 de junio de 2022.
[38] En la transcripción de la prueba oral (en adelante, TPO) a la pág. 54, líneas 12-14. Ley para Establecer la Jornada de Trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 LPRA § 271 *et seq.*
[39] En la TPO, a las págs. 7-34.
[40] En la TPO, a las págs. 72-119.

apelada.[41] La prueba documental admitida consistió en el *Informe* rendido por el perito, marcado como Exhibit I de la apelada.[42] De la TPO se desprende que ambas partes tuvieron la oportunidad de hacer preguntas a los testigos presentados.

El *primer* testimonio presentado fue el de la señora Fontán Pérez.[43] En el interrogatorio directo, declaró estar incapacitada por el Seguro Social desde enero del año 2022,[44] por razones físicas y emocionales.[45] Sostuvo que el doctor Ignacio Jaca Montijo (en adelante, doctor Jaca) fue su patrono y que en ese empleo realizó trabajo administrativo para él desde el 13 de junio de 2013, atendiendo el cuadro telefónico, a los pacientes, hacía el cuadre de caja y archivo.[46] La apelada declaró que trabajó con el doctor Jaca hasta el 28 de diciembre de 2018.[47] Testificó que su trabajo era de lunes a viernes de 5:00 a.m. a 12:30 p.m., pero a veces hacía horas extras.[48]

Continuó declarando que un día de trabajo, el 25 de julio de 2018,[49] llegó a la oficina y tuvo que bajar del piso nueve (9) -*donde ubicaba la oficina*- al piso dos (2) a buscar unas galletas. Sostuvo que al montarse en el elevador presionó el botón B y al cerrarse la puerta, el elevador hizo una caída libre desde el piso nueve (9) hasta el piso B.[50] A preguntas de su abogado, declaró que cuando sucedió el accidente, prefirió acudir al Fondo del Seguro del Estado (en adelante, CFSE), pero primero fue a una Sala de Emergencia.[51] En la CFSE le dieron dos (2) días de descanso para luego regresar a sus

---

[41] En la TPO, a la pág. 72, líneas 4-5.
[42] *Id.,* a la pág. 77, líneas 6-7.
[43] *Id.,* a las págs. 7-34.
[44] En la TPO indica que fue en el año 2018, mientras que, en la *Moción informando objeciones a la prueba oral sometida por la parte apelante*, presentada por la apelada, indica que debió ser 2022. Acogemos la fecha año 2022 por ser la que recoge la temporalidad del asunto.
[45] En la TPO a la pág. 8, líneas15-20.
[46] *Id.,* a la pág. 9, líneas 1-7.
[47] *Id.,* a la pág. 9, líneas 8-10.
[48] *Id.,* a la pág. 10, líneas 2-13.
[49] *Id.,* a la pág. 10, líneas 14-18.
[50] *Id.,* a la pág. 9, líneas 19-25 y pág. 10, línea 1.
[51] *Id.,* a la pág. 10, líneas 21-22 y pág. 11, líneas 1-2.

labores bajo CT. Explicó que CT significa que podía regresar a sus labores, pero bajo tratamiento.[52] Atestiguó que en la CFSE le ordenaron tratamiento de fármacos, terapias, tratamiento psiquiátrico y psicológico por situaciones emocionales y físicas.[53] Destacamos que, conforme surge de la TPO, a la fecha del juicio ya había sido dada de alta de la CFSE.[54]

La señora Fontán Pérez continuó declarando que al regreso a su trabajo le asignaron las terapias en el área central y lumbar cinco (5) veces por semana y las citas se las coordinaban para luego del medio día, para poder trabajar en la mañana.[55] En relación a las terapias, declaró que le notificó al patrono y a la administradora, señora Lizmarie Burgos (en adelante, señora Burgos), quien era su supervisora inmediata, entonces, acordaron que ella tomaría las terapias y que "por acomodo razonable yo directo a mi casa..." por lo que se quedaría una persona para atender el personal de la oficina.[56] Continuó declarando que en la primera semana de terapia todo estuvo bien, pero que ya en la segunda, la señora Burgos le comentó que ella tenía que regresar -al trabajo- después de las terapias porque por su culpa se estaba viendo afectada la práctica del doctor y que "tenía que regresar a la oficina".[57] En respuesta al comentario de que tenía que regresar al trabajo, la señora Fontán sostuvo que le expresó que ella: ". . . estaba haciendo las terapias muy mareada, con náuseas, con vómitos . . .", y que se le hacía difícil regresar porque le daba miedo poner en riesgo su vida.[58]

A preguntas de su abogado, declaró que, luego del accidente y a su regreso al trabajo, en muchas ocasiones, la señora Burgos le requería limpiar los inodoros, la sala de espera, todos los cubículos,

---

[52] *Id.,* a la pág. 11, líneas 12-24.
[53] *Id.,* a la pág. 11, líneas 4-10.
[54] *Id.,* a la pág. 27, líneas 10-18.
[55] *Id.,* a la pág. 12, líneas 3-25 y pág. 13, líneas 1-3.
[56] *Id.,* a la pág. 13, líneas 4-11.
[57] *Id.,* a las págs. 5-14.
[58] *Id.,* a la pág. 15, líneas 10-12.

a pesar de que "sabían que yo no podía hacer ese tipo de gestión porque estaba lesionada de mi espalda y aún lesionada del área cervical [...]" y que le requerían buscar materiales que eran en forma de resmas de papel y que ella no tenía fuerzas para cogerlas en un carrito y subirlas por el elevador.[59] Durante el interrogatorio, la apelada distinguió entre las tareas que tenía antes de su accidente y las que le requirieron hacer luego de su accidente. Describió que luego del accidente le requerían limpiar los baños, la sala de espera, le "pusieron el cargo de facturación" sin ella tener el mismo grado y capacitación y con esto, empezó a trabajar horas excesivas en el turno.[60] Lo anterior provocó que tuviese que posponer sus terapias o citas con la CFSE, añadiendo que, en la oficina, había tantos pacientes, que no podía salir puesto a que le indicaban que ella tenía que cubrir y si no podía cubrir las bases, no estaba apta para ese empleo.[61]

En relación a la fecha en que culminó su empleo, declaró que, el 28 de diciembre de 2018, recibió un mensaje de texto, que le fue enviado por la señora Burgos en el cual le informaron que le habían enviado una carta de despido que le provocó una crisis emocional.[62] Entonces, continuó declarando que ella procedió a enviarle un mensaje de texto a otra empleada de la oficina, de nombre Sandra, a quien ella había adiestrado para hacer funciones de secretaria.[63] Atestiguó que Sandra no le contestó, pero que recibió un mensaje de texto de la señora Burgos en el cual le indicó que no tenía que estar escribiéndole a Sandra, que si tenía algo que decir, que se lo dijera a ella.[64] De ahí, sostuvo que fue a la CFSE y le asignaron una trabajadora social y la refirieron a un psiquiatra y a un psicólogo.[65]

---

[59] *Id.,* a la pág. 15, líneas 22-25 y pág. 16, líneas 1-6.
[60] *Id.,* a la pág. 16, líneas 22-25 y pág. 17, líneas 1-2.
[61] *Id.,* a la pág. 17, líneas 2-6.
[62] *Id.,* a la pág. 17, líneas 12-24.
[63] *Id.,* a la pág. 17, líneas 24-25 y pág. 18, líneas 1-18.
[64] *Id.,* a la pág. 17, líneas 21-24.
[65] *Id.,* a la pág. 19, líneas 2-5.

La señora Fontán Pérez declaró que esta situación le ha provocado una ansiedad severa, depresión, llora todo el día, no tiene deseo sexual, siente que no sirve, que la utilizaron, que mientras estuvo estable ella fue una mina de oro y luego de su lesión simplemente la botaron "como un trapo sucio".[66]

En relación a sus condiciones de empleo desde el accidente hasta su despido, declaró que las únicas vacaciones que ella tomó fueron en diciembre, porque en noviembre tenía unas citas calendarizadas para unas terapias y luego de que se las aprobaron, se las transfirieron para diciembre.[67] Sostuvo que su horario de trabajo luego del accidente era de 4:30 a.m. a 1:30 p.m., pero que si faltaba a la cita – *de la CFSE* - tenía que quedarse de 8:30 a.m. a 5:00 p.m. porque tenía que cubrir.[68] También, declaró que previo al accidente, ella no registraba su asistencia mediante un ponche en su trabajo,[69] pero, después de agosto de 2018, la obligaron a ponchar hasta diciembre, cuando terminó su jornada y se fue de vacaciones.[70]

En relación con su salario, declaró que ella trabajaba por contrato, pero no era un sueldo fijo. Añadió que trabajaba a ocho dólares ($8.00) la hora.[71] Previo a su accidente, narró que ella cumplía todas las metas de su trabajo.[72] En cuanto a su salud previo al accidente, declaró que sufría de ansiedad y depresión, pero que esa condición no le limitaba a poder cumplir con sus funciones.[73] También, declaró que luego se sintió bien y lo terminó.[74] Luego del accidente, sostuvo que comenzó a recibir un trato hostil por parte de la señora Burgos y se descontroló por completa, se encerraba en

---

[66] *Id.,* a la pág. 20, líneas 12-16.
[67] *Id.,* a la pág. 21 líneas 1-7.
[68] En la TPO, a la pág. 21, líneas 19-25.
[69] La apelada aclaró que cuando comenzó en el empleo ella ponchaba, pero fue ascendida a supervisora y dejó de ponchar. Véase TPO, a la pág. 23, líneas 1-8.
[70] En la TPO, a la pág. 22, líneas 6-13.
[71] *Id.,* a la pág. 22, líneas 19-21.
[72] *Id.,* a la pág. 24, líneas 4-5.
[73] *Id.,* a la pág. 25, líneas 13-21.
[74] *Id.,* a la pág. 25, líneas 19-20.

el baño a llorar con ataques de pánico, no duerme, no come, no tiene ningún deseo sexual, tiene pesadillas y se sudaba cuando entraba al trabajo.[75] En cuanto a la medicación, atestiguó que utiliza seis (6) medicamentos diarios, los cuales le provocaban sueño, debilidad, náusea y confusión[76], mientras que antes del accidente solo utilizaba uno.[77] Narró que, luego de ser dada de alta de la CFSE, comenzó a recibir servicios psicológicos.[78] La apelada atestiguó que ha tenido ocho (8) hospitalizaciones, cuatro (4) de ellas parciales, en el Hospital Capestrano, la primera de ellas a finales del año 2019, y la última en noviembre del año 2021.[79] En lo relativo a si recibió compensación luego de terminar el trabajo en la oficina del doctor Jaca, declaró que no recibió nada, salvo el cheque de la bisemanal, pero, que le debían diez (10) días de vacaciones.[80]

Luego, comenzó el contrainterrogatorio donde la señora Fontán Pérez declaró que cuando tenía terapias en la CFSE, no regresaba a trabajar.[81] También, aclaró que, cuando recibió el mensaje de texto sobre el despido, la carta se envió por correo electrónico.[82] A preguntas de la representación legal de la parte apelante, explicó que en el correo electrónico lo que decía era que "a causa de p[é]rdidas de treinta y ocho mil dólares hecho en la facturación, y descuadres de caja, pues de facturación".[83] La señora Fontán Pérez negó haber recibido amonestación sobre su trabajo, requerimientos en cuanto a los $38,000.00 dólares o comunicación en cuanto a los descuadres.[84] La testigo admitió que durante el año 2018, tuvo un caso de divorcio y que se ausentó al trabajo para ir a

---

[75] En la TPO, a la pág. 25, líneas 22-25 y pág. 26, líneas 1-4.
[76] Los medicamentos que expuso que ingería, eran los siguientes: Cymbalta, Klonopin, Buspar, Trazodone, Pectoril y Risperdal. Véase TPO a la pág. 27, líneas 3-5.
[77] En la TPO a la pág. 26, líneas 11-25 y pág. 27, líneas 8-9.
[78] *Id.,* a la pág. 27, líneas 23-24 y pág. 28, líneas 1-14.
[79] *Id.,* a la pág. 28, líneas 16-19 y pág. 29, líneas 1-12.
[80] *Id.,* a la pág. 29, líneas 15-25 y pág. 30, líneas 1-2.
[81] *Id.,* a la pág. 36, líneas 16-19.
[82] *Id.,* a la pág. 38, líneas 6-20.
[83] *Id.,* a la pág. 38, líneas 21-24.
[84] *Id.,* a la pág. 39, líneas 8-18.

una vista.[85] También, admitió que tuvo que solicitar una orden de protección contra su ex pareja, pero que la señora Burgos no le permitió ir a la vista de extensión y no se la extendieron.[86] Finalmente, a preguntas de la representación legal de la parte apelante, la señora Fontán Pérez declaró que solicitó una determinación de incapacidad del Seguro Social en enero del año 2020 y se la concedieron en enero del año 2022.[87]

El segundo y último testimonio presentado fue el del doctor Cabrera, psiquiatra y perito de la apelada.[88] En el turno del interrogatorio directo, el doctor Cabrera declaró haber evaluado a la apelada en su oficina en dos (2) ocasiones durante el mes de febrero del año 2022.[89] En cuanto a la metodología utilizada para hacer evaluaciones psiquiátricas, sostuvo que utilizó la misma que ha usado durante sus treinta y cinco (35) años de experiencia.[90] Admitido el *Informe,* el perito declaró sobre los documentos que revisó como parte de su evaluación. Además, atestiguó que la apelada era una paciente de treinta y dos (32) años, que cuando fue evaluada por este, ya le había sido aprobado el Seguro Social y que esto, era sumamente raro en una persona joven. Sostuvo que uno de los criterios del Seguro Social es que esté totalmente incapacitada para hacer cualquier cosa, sea emocional o físicamente.[91] Testificó que en la evaluación recibió información sobre lo ocurrido a partir del 25 de julio de 2018, y narró en torno al accidente sufrido por la señora Fontán Pérez, explicó que luego del accidente ella siguió trabajando, la pusieron en CT y que ella no quería perder su trabajo, pero, que le exigieron más cosas de lo normal, tales como ponchar y

---

[85] *Id.,* a la pág. 30 línea 39 y pág. 40, líneas 1-2.
[86] *Id.,* a la pág. 40, líneas 7-21.
[87] *Id.,* a la pág. 41, líneas 4-10.
[88] *Id.,* a las págs. 72-119 y pág. 55, línea 18.
[89] *Id.,* a la pág. 72, líneas 11-25 y pág. 73, línea 1.
[90] *Id.,* a la pág. 73, líneas 12-19.
[91] *Id.,* a la pág. 80, líneas 1-11.

más responsabilidades.[92] Sostuvo, además, que esto le causó muchas angustias a ella, a tal grado que le afectó emocionalmente.[93]

El doctor Cabrera opinó que a base de su evaluación las condiciones laborales posteriores al accidente fueron un agravante a su condición preexistente de ansiedad, la cual no era tan severa, pero se volvió más severa.[94] Además, concluyó que la señora Fontán Pérez tenía dos (2) diagnósticos, el primero fue depresión mayor severa crónica recurrente con sicosis y el segundo desorden de pánico y explicó en qué consistían.[95]

Continuó declarando que, en su opinión profesional, las condiciones de la señora Fontán Pérez se agravaron por el despido y por el trato que recibió laboralmente.[96] Según el historial evaluado, el doctor Cabrera declaró que antes del accidente, la apelada estaba haciendo trabajos, no había quejas de que estuviese haciendo un trabajo deficiente.[97] En relación al diagnóstico sobre desorden de pánico, se le preguntó si la apelada lo había presentado antes del accidente, a lo que el doctor Cabrera respondió que ella había tenido síntomas de angustia, pero esto no significaba que tuviese ese diagnóstico.[98] Opinó que la apelada tenía síntomas de ansiedad y que se los estaba tratando.[99]

Luego, comenzó el turno del contrainterrogatorio. A preguntas de la representación legal de la parte apelante, explicó que la señora Fontán Pérez recibió terapias psicológicas en el año 2017, o sea, antes del accidente.[100] Declaró que, para esa fecha, el diagnóstico de la apelada cuando empezó era un desorden de ajuste.[101] Atestiguó que, este diagnóstico se refiere a problemas estresantes

---

[92] *Id.,* a la pág. 81, líneas 5-13.
[93] *Id.,* a la pág. 81, líneas 13-14.
[94] *Id.,* a la pág. 82, líneas 19-25.
[95] *Id.,* a la pág. 84, líneas 2-8 y pág. 85, líneas 1-19.
[96] *Id.,* a la pág. 85, líneas 24-25.
[97] *Id.,* a la pág. 86, líneas 10-15.
[98] *Id.,* a la pág. 86, líneas 24-25 y pág. 87, línea 1.
[99] *Id.,* a la pág. 87, líneas 1-3.
[100] *Id.,* a la pág. 88, líneas 6-17.
[101] *Id.,* a la pág. 89, líneas 2-13 y pág. 89, líneas 1-7.

que fueron pasando y causaron la sintomatología e indicó que la apelada tuvo problemas con relación a un divorcio y mucha carga de trabajo y dolores físicos.[102] Admitió que los dolores físicos de la apelada eran previos a diciembre del año 2017 y que tenía un diagnóstico de depresión y desorden esquizo-afectivo.[103] Explicó que, en cuanto al desorden esquizo-afectivo, se tienen que cumplir unos criterios y que la apelada no los cumplía.[104] En relación a un diagnóstico de fibromialgia, el perito declaró que la apelada lo tenía y que se agravó por el accidente.[105] También declaró que, para el año 2017, la apelada tenía artritis reumatoide, neuralgia occipital, dos (2) discos herniados, espuelones e historial pasado de asma bronquial.[106] En relación a medicamentos que usara la apelada, explicó que la apelada utilizaba cannabis medicinal para los dolores.[107] Entre los medicamentos ordenados a la apelada, expresó que le pueden afectar el libido.[108] Luego, comenzó el turno del re directo, más no hubo re contrainterrogatorio.

Quedando el caso sometido, el 14 de octubre de 2022, el Tribunal *a quo* emitió y notificó la *Sentencia* final apelada, que constituye el *primer* dictamen sobre el cual se solicita la revisión ante nos.[109] En ella, declaró Con Lugar la reclamación presentada por la señora Fontán Pérez en cuanto a represalias conforme a la Ley Núm. 115-1991[110], así como la relacionada a la reclamación por vacaciones acumuladas y no liquidadas a tenor con la Ley Núm. 180-1998.[111] En virtud de lo anterior, el foro primario condenó a la

---

[102] *Id.,* a la pág. 89, líneas 6-13.
[103] *Id.,* a la pág. 89, líneas 16-25 y pág. 90, líneas 1-9.
[104] *Id.,* a la pág. 91, líneas 8-21.
[105] *Id.,* a la pág. 96, líneas 3-9 y pág. 99, líneas 14-17.
[106] *Id.,* a la pág. 101, líneas 6-15.
[107] *Id.,* a la pág. 102, líneas 7-9.
[108] *Id.,* a la pág. 112, líneas 18-20.
[109] Apéndice de la parte apelante, a las págs. 266-280.
[110] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*
[111] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

parte apelante a pagar a favor de la señora Fontán Pérez la suma de $40,000.00 dólares por daños y angustias mentales, más $40,000.00 dólares por concepto de penalidad al amparo de la Ley Núm. 115-1991,[112] para un total de $80,000.00 dólares, por conllevar la duplicación de la suma concedida de la suma concedida en daños y angustias mentales. Además, condenó a la parte apelante a pagar la suma de $3,000.00 dólares por concepto de vacaciones acumuladas, que, desglosadas son $1,500.00 dólares por lo anterior, más una cantidad igual por la penalidad, de conformidad a la Ley Núm. 180-1998.[113] Por último, el TPI le impuso a la parte apelante el pago del veinticinco por ciento (25%) del total concedido, por concepto de honorarios de abogados.

Como parte de la vista celebrada en el presente caso, el foro primario consignó en su *Sentencia* final, once (11) determinaciones de hechos que estimó probados. Para un cabal entendimiento las transcribimos *in extenso*:

1. El 13 de junio de 2013, la querellante, Yarilis Fontán Pérez, comenzó a laborar para el querellado, Dr. Jaca Montijo CSP, como empleada contratada por tiempo indeterminado.
2. A la fecha de su despido, el 28 de diciembre de 2018, la señora Fontán Pérez ocupaba la posición de Supervisora Administrativa con responsabilidades que incluían mantener el "citario" a capacidad, atender llamadas telefónicas, archivo y las operaciones de la oficina.
3. La supervisora inmediata de la querellante lo era la Sra. Lizmarie Burgos, esposa del Dr. Ignacio Jaca Montijo.
4. La querellante acumulaba licencia por vacaciones.
5. La señora Fontán Pérez laboró cinco (5) años y seis (6) meses para el Dr. Jaca Montijo CSP.
6. A raíz de una caída sufrida, la querellante acudió al Fondo del Seguro del Estado, para los exámenes médicos correspondientes y acogerse a sus beneficios. El Fondo del Seguro del Estado refirió a la señora Fontán a terapias físicas del área cervical y lumbar.
7. El querellado, Dr. Jaca Montijo CSP y la Administradora, Sra. Lizmarie Burgos, asumieron

---

[112] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*
[113] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

una actitud hostil y le impusieron un cambio en las condiciones de empleo a la querellante, en represalia, por haberse reportado al Fondo del Seguro del Estado.

8. En su Informe Pericial, el psiquiatra Dr. Fernando Cabrera Delgado llegó a la conclusión que *debido al maltrato laboral y las circunstancias que ella (querellante) fue sometida en su trabajo y las condiciones después de su incidente (caída) del 7/25/18 y después de su despido el 12/28/18, desarrolló agravación de su condición con síntomas como pobre autoestima, inseguridad, ansiedad, depresión y poca confianza en ella misma.*

9. Transcurrieron pocos meses desde que la querellante se reportó al Fondo del Seguro del Estado hasta que se produjo su despido.

10. El 28 de diciembre de 2018, Dr. Jaca Montijo CSP le envío [sic] un mensaje de texto a la querellante informándole su despido con efectividad inmediata, sin ofrecer una causa justificada.

11. Se pasó prueba de la deuda que por vacaciones acumuladas no se le han pagado a la parte querellante. [114]

En desacuerdo, el 24 de octubre de 2022, la parte apelante presentó un recurso de *Apelación* en el cual elaboró los siguientes seis (6) señalamientos de error:

Primer Error: Erró manifiestamente y abusó de su discreción el Tribunal de Primera Instancia al eliminar las alegaciones y dictar sentencia parcial contra la querellada al ser nulas al no haberse notificado a la Querellada previamente del incumplimiento con el descubrimiento de prueba y de sus posibles consecuencias, en violación del debido proceso de ley de la Querellada.

Segundo Error: Erró manifiestamente el TPI al concluir que la Querellante sufrió actos de represalia por parte de la Querellada[,] configurándose una acción bajo la Ley 115-1991.

Tercer Error: Erró manifiestamente el TPI al no aplicar la inmunidad patronal que le confiere la Ley de Compensación de Accidentes del Trabajo.

Cuarto Error: Erró manifiestamente el TPI al condenar a la parte Querellada al pago de $80,000.00 en concepto de daños sin deducir a dicha cantidad la cantidad de $15,923.08 en concepto de mesada concedida en su Sentencia Parcial del 7 de mayo de 2020.

Quinto Error: Erró manifiestamente el TPI al condenar a la parte Querellada al pago de 25% del total concedido, para honorarios de abogado.

---

[114] Apéndice de la parte apelante, a las págs. 267-268.

Sexto Error: Erró manifiestamente el TPI al condenar a la parte Querellada al pago de vacaciones acumuladas.

Luego varios incidentes procesales ante esta Curia, el 14 de marzo de 2023, acogimos la TPO con las objeciones presentadas por la apelada. De ahí, el 25 de mayo de 2023, la parte apelante presentó su *Alegato Suplementario*; mientras que, el 26 de junio de 2023, se presentó el *Alegato en Oposición a Recurso de Apelación*.

Contando con la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

**II**

**A. Ley Núm. 2-1961**

La Ley Núm. 2-1961 provee un mecanismo procesal sumario para la rápida tramitación y adjudicación de las querellas de empleados presentadas contra sus patronos por servicios prestados, relacionadas a salarios, beneficios y derechos laborales.[115] A esos efectos, las reclamaciones, ameritan ser resueltas de forma diligente, protegiendo el carácter sumario, de modo que se pueda implantar la política pública del Estado de proteger el empleo, desalentar el despido sin justa causa y proveer al empleado despedido los medios económicos para su subsistencia mientras consigue un nuevo empleo.[116] A luz de lo anterior, dicho procedimiento sumario fue instituido con el fin de remediar la desigualdad económica existente entre las partes al instarse una reclamación de este tipo.[117] Igualmente, hay que considerar que la mayoría de la información sobre los reclamos salariales o por un despido está en posesión del empleador.[118] A tales efectos, el Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo)

---

[115] Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 265 (2018). *Patino Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016). *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008). *Lucero v. San Juan Star*, 159 DPR 494, 504 (2003).
[116] *Ruiz Camilo v. Trafon Group, Inc., Id. Aguayo Pomales v. R & G Mortg.*, 169 DPR 36, 43 (2006). *Lucero v. San Juan Star, Id.*
[117] *Lucero v. San Juan Star, Id. León v. Rest. El Tropical*, 154 DPR 249, 254 (2001).
[118] *Pena Lacern v. Martínez Hernández*, 210 DPR 425, 434 y 447 (2022).

ha dispuesto que el carácter sumario constituye la médula de la Ley Núm. 2-1961.[119]

A raíz de ello, la Asamblea Legislativa aprobó la Ley Núm. 133-2014[120], con la intención de atemperar las disposiciones de esta Ley al esquema judicial vigente y extender el carácter sumario de la legislación a la etapa apelativa para cumplir con el propósito rector de la misma, de proveer al empleado un remedio rápido y eficaz.[121] Mediante dicha legislación, el Artículo 5 reenumeró la Sección 10 de la Ley Núm. 2-1961 como Sección 9 y la enmendó para que se lea como sigue:

> Cualquiera de las partes que se considere perjudicada por la sentencia emitida por el Tribunal de Primera Instancia podrá interponer recurso de apelación ante el Tribunal de Apelaciones, en el término jurisdiccional de diez (10) días, computados a partir de la notificación de la sentencia del Tribunal de Primera Instancia.[122]

### B. Falta de Jurisdicción Debido a Recurso Tardío

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[123] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela ni las partes pueden otorgársela.[124] Es norma reiterada en nuestro ordenamiento, que: "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[125] Es norma reconocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su

---

[119] *Bacardí Corp. v. Torres Aguayo*, 202 DPR 1014, 1019 (2019).

[120] Ley para enmendar las Secciones 1, 4, 9, 10 y 11; derogar las Secciones 6, 12 y 13, y reenumerar las Secciones 7, 8, 9, 10 y 11, como Secciones 6, 7, 8, 9 y 10 respectivamente, de la Ley Núm. 2 de 1961, Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 133 de 6 de agosto de 2014.

[121] *Id.*, Exposición de Motivos. *Patino Chirino v. Parador Villa Antonio*, *supra*, 446-447.

[122] Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA § 3127, secc. 9.

[123] *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020). *Torres Alvarado v Madera Atiles*, 202 DPR 495, 499-500 (2019). *AAA v. Unión Independiente Auténtica de Empleados de la AAA*, 199 DPR 638, 651-52 (2018).

[124] *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).

[125] *Torres Alvarado v Madera Atiles*, *supra*, 500. *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012). *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). *Ríos Martínez, Com. Alt. PNP v. CLE, Id.*

consideración constituyen materia privilegiada.[126] De manera que, debido a su naturaleza privilegiada, las cuestiones de jurisdicción deben ser resueltas con preferencia, ya sea porque fuera cuestionada o motu proprio, pues, por su naturaleza, incide directamente sobre el poder que tiene para adjudicar las controversias.[127]

La Alta Curia ha dispuesto que, para que un recurso quede perfeccionado es necesaria su oportuna presentación y notificación del escrito a las partes apeladas.[128] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[129] De lo contrario, cualquier dictamen en los méritos será nulo y, por ser ultra vires, no se puede ejecutar.[130] Es decir, una sentencia dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente.[131]

Una de las instancias en que un tribunal carece de jurisdicción es cuando se presenta un recurso tardíamente. Lo anterior, debido a que, un recurso tardío adolece del grave e insubsanable defecto de falta de jurisdicción.[132] Su presentación carece de eficacia y como consecuencia no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[133]

---

[126] *AAA v. Unión Abo. AAA*, 158 DPR 273, 279 (2002).
[127] *Allied Management Group, Inc. v Oriental Bank*, 204 DPR 374, 386 (2020). *Torres Alvarado v Madera Atiles*, *supra*. *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018). *Fuentes Bonilla v. ELA*, 200 DPR 364, 372 (2018).
[128] *González Pagán v. Moret Guevara*, 202 DPR 1062, 1070-1071 (2019).
[129] 4 LPRA Ap. XXII-B, R. 83. *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero*, 209 DPR 1, 5 (2022). *Yumac Home Furniture v. Caguas Lumber Yard*, 194 DPR 96, 107 (2015). *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[130] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016). *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).
[131] *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 921-922 (2000).
[132] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo*, 210 DPR 271, 289 (2022). *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero, supra. Yumac Home Furniture v. Caguas Lumber Yard, supra.*
[133] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo, Id. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero, Id.* Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 98 (2008).

Un recurso de revisión tardío es aquel que se presenta fuera del término disponible para ello, y que, consecuentemente, manifiesta la ausencia de jurisdicción.[134] Desestimar un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro.[135]

## C. Discreción y Deferencia Judicial

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[136] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[137] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[138] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[139]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[140] El Alto Foro ha determinado que un juzgador incurre

---

[134] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo, Id.*
[135] *Yumac Home Furniture v. Caguas Lumber Yard, supra.*
[136] *Pueblo v. Pérez Nuñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).
[137] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).
[138] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra*, 291.
[139] *Pueblo v. Pérez Nuñez, supra*, 529.
[140] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987). S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[141] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[142]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[143]

Ahora bien, cabe destacar que el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[144] Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y

---

[141] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

[142] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).

[143] *Santiago Ortiz v. Real Legacy et al., supra. Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra,* 63. *González Hernández v. González Hernández, supra,* 777. *Pueblo v. Viruet Camacho,* 173 DPR 563, 584 (2009). *Pueblo v. Irizarry, supra. Pueblo v. Acevedo Estrada, supra.*

[144] *González Hernández v. González* Hernández, *Id. Sepúlveda v. Depto. de Salud,* 145 DPR 560, 573 (1998).

evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[145]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[146] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[147]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[148] Un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[149]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[150] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[151] A esos efectos, conviene destacar que, la intervención del foro

---

[145] *González Hernández v. González* Hernández*, Id. Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001). *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[146] S*ierra v. Tribunal Superior, supra.*
[147] *Pueblo v. Pérez Núñez, supra.*
[148] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[149] *Pueblo v. Rivera Santiago, Id.*
[150] *González Hernández v. González Hernández, supra,* 776.
[151] *Rivera Pérez v. Cruz Corchado, supra.*

apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[152]

## D. Ley Núm. 180-1998

La Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico establece, entre otras cosas, todo lo relacionado a la regulación uniforme de las licencias por vacaciones y enfermedad.[153] Dicha legislación, en su Artículo 9 dispone:

> (a) Todo [...] empleado que por su trabajo reciba compensación inferior a la prescrita en esta Ley o en un convenio colectivo o en un contrato individual de trabajo tendrá derecho a cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario, vacaciones, licencia por enfermedad o cualquier otro beneficio, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de los costos, gastos, intereses y honorarios de abogados del procedimiento, sin que para nada de ello obste pacto en contrario.[154]
> [...]

## E. Ley Núm. 115-1991

La Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial fue creada con el propósito de disponer que todo empleado que fuere despedido, amenazado u objeto de discrimen en su cargo o empleo, por ofrecer testimonio ante un foro legislativo, administrativo o judicial, tenga una causa de acción en contra de su patrono.[155]

A tales efectos, el Artículo 2 de dicha legislación dispone que:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un

---

[152] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

[153] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

[154] *Id.*, 29 LPRA § 250i, Art. 9.

[155] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(b) **Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono** dentro de tres (3) años de la fecha en que ocurrió dicha violación y **solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado**. **La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley**.

(c) **El empleado deberá probar la violación mediante evidencia directa o circunstancial**. **El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido**, amenazado o **discriminado en su contra de su empleo**. **Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido**.[156] (Énfasis suplido.)

En el caso *Irizarry v. J&J Cons. Prods. Co., (P.R.), Inc.*, el

Tribunal Supremo resolvió que:

Somos del criterio que la verdadera intención legislativa de la Ley Núm. 11[-1991] es proteger al empleado por expresiones vertidas por éste en cualquier procedimiento, y por consiguiente, resolvemos que acudir al Fondo [del Seguro del Estado] para acogerse a los beneficios de la Ley Núm. 45[-1935] es una "actividad protegida" por la Ley Núm. 115[-1991].[157]

A su vez, se requiere que el empleado haya sido despedido, amenazado o discriminado en el empleo, subsiguientemente a su incursión en la actividad protegida.[158] Subsiguientemente, se entenderá que la acción adversa que experimentó el empleado ocurrió al poco tiempo de haber incurrido en la alegada actividad

---

[156] *Id.*, 29 LPRA § 194b, Art. 2.
[157] *Irizarry v. J&J Cons. Prods. Co., (P.R.), Inc.*, 150 DPR 155, 170 (2000). *Rivera Menendez v. Action Service*, 185 DPR 431, 445 (2012).
[158] *Rivera Menendez v. Action Service, Id.*, 445-446.

protegida.[159] Por lo tanto, para establecer un caso *prima facie* es suficiente con que se establezca la proximidad temporal.[160]

Sin embargo, no todo caso se configura dentro de un espacio temporal que pueda catalogarse como de poco tiempo.[161] En dichos casos, se requiere que el empleado constate elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa: (i) que fue tratado de forma distinta a otros empleados; (ii) que existió un patrón de conducta antagónica en su contra; (iii) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias; o, (iv) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal.[162] La evaluación de dichos elementos implica un acercamiento caso a caso.[163]

### F. Ley Núm. 80-1976

La Ley Sobre Despidos Injustificados fue creada para disponer que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo donde se trabaje mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin justa causa tenga derecho a recibir de su patrono, en adición al importe del salario devengado, una indemnización correspondiente al sueldo de un mes y una indemnización progresiva adicional equivalente al sueldo de una semana por cada año de servicio.[164] Por consiguiente, todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono por concepto de

---

[159] *Id.*, 446.
[160] *Id.*
[161] *Feliciano Martes v. Sheraton*, 182 DPR 368, 400 (2011).
[162] *Id.*
[163] *Id.*
[164] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*

indemnización por despido lo siguiente: (i) una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado; y, (ii) una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.[165]

Acentuamos que, los años de servicio se determinarán sobre la base de todos los periodos de trabajo anteriores acumulados que el empleado haya trabajado para el mismo patrono antes de su despido, siempre y cuando la relación de empleo no se haya interrumpido por más de dos (2) años y los servicios se hayan prestado en Puerto Rico.[166] Para propósitos de esta legislación, se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono.[167] De igual forma, la Ley hace mención de seis (6) razones que se entenderá justa causa si afectan el buen y normal funcionamiento de un establecimiento.[168] Destacamos que, la indemnización que establece el Artículo 1 de esta Ley se pagará tomando como base el tipo de salario más alto devengado por el empleado dentro de los tres (3) años inmediatamente anteriores al momento de su despido.[169]

Resulta importante mencionar que, es irrenunciable el derecho del empleado que fuere despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece el Artículo 1 de esta Ley.[170]

La Constitución de Puerto Rico en su Carta de Derechos, Art. II, Sec. 16, reconoce el derecho de todo trabajador de estar protegido

---

[165] *Id.*, 29 LPRA § 185a, Art. 1.
[166] *Id.*
[167] *Id.*, 29 LPRA § 185b, Art. 2.
[168] *Id.*
[169] *Id.*, 29 LPRA § 185d, Art. 4.
[170] *Id.*, 29 LPRA § 185i, Art. 9.

contra riesgos a su salud en su trabajo o empleo.[171] A esos efectos, la Ley del Sistema de Compensaciones por Accidentes del Trabajo fue creada para promover el bienestar de los empleados, en lo referente a accidentes que causen la muerte, lesiones o enfermedades derivadas de la ocupación de los trabajadores en el curso de su empleo.[172] De igual forma, dicha legislación busca establecer el deber de los patronos en compensar a sus trabajadores beneficiarios por razón de enfermedades, lesiones o muerte derivadas de la ocupación, independientes de la negligencia.[173]

A tales efectos, dicha Ley dispuso la creación de la CFSE.[174] Todo empleado que sufriere lesiones o enfermedades ocupacionales dentro de las condiciones de esta Ley tendrá derecho a: (i) asistencia médica, (ii) incapacidad transitoria, (iii) incapacidad parcial permanente, (iv) incapacidad total permanente, (v) compensación por muerte, según amerite cada caso.[175]

### G. Ley Núm. 402-1950

La Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos dispone que:

> En todo caso radicado ante las cortes de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado, si este no fuere uno de los abogados del Departamento de Trabajo y Recursos Humanos.[176]

---

[171] Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA § 1a, Art. 1-A.

[172] *Id.*, 11 LPRA § 1 *et seq.*

[173] *Id.*

[174] *Id.*, 11 LPRA § 1a, Art. 1-A.

[175] *Id.*, 11 LPRA § 3, Art. 3.

[176] Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos, Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA § 3115, Art. 2.

**III**

En el recurso de *Apelación* ante nuestra consideración, la parte apelante acude ante nos luego de que la primera instancia judicial emitiera una *Sentencia* final en una acción presentada al amparo de la Ley Núm. 2-1961.[177] Conviene señalar que, previo a que el foro primario emitiera la *Sentencia* final, ya para el año 2020, había emitido una *Sentencia Parcial,* para disponer de algunas de las controversias en este caso, la cual advino final y firme. Aclarado lo anterior y con esto en mente, en el recurso ante nos, la parte apelante formuló seis (6) errores que, a su juicio, cometió el Tribunal *a quo.* Con este preámbulo, y luego de evaluar los escritos de las partes, así como la totalidad del expediente, incluyendo la TPO y sus objeciones, procederemos a discutir los errores esgrimidos en el recurso ante nos.

La acción de autos surgió con la presentación de una *Querella* contra la parte apelante por despido injustificado al amparo de la Ley Núm. 2-1961.[178] Luego de varios incidentes procesales, mediante *Sentencia Parcial* emitida y notificada el 7 de mayo de 2020, el TPI determinó que Montijo, C.S.P. no tuvo causa justificada para despedir a la señora Fontán Pérez y ordenó a la parte apelante a: (i) pagar a la señora Fontán Pérez una mesada por la cantidad de $15,923.08 dólares de acuerdo con la Ley Núm. 80-1976[179] consistente en tres (3) meses de salario y dos (2) semanas por cada año de servicio; (ii) el pago de $2,076.92 dólares por concepto de los ingresos dejados de percibir por un periodo de al menos tres (3) semanas a raíz del despido injustificado; (iii) el pago de honorarios de abogado en un veinticinco por ciento (25%) de la suma impuesta en conexión a los salarios dejados de devengar; (iv) la penalidad en

---

[177] Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA § 3118 *et seq.*
[178] *Id.*
[179] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*

cuanto al despido sin causa justificada, equivalente a $4,500.00 dólares; y, (iv) el pago de costas incurridas, aplicándose a todo lo anterior el pago de intereses de tipo legal. Sin intención de repetir, enfatizamos que dicha *Sentencia Parcial* advino final y firme.

Continuado el caso ante el TPI, el 14 de octubre de 2022, el Tribunal *a quo* emitió y notificó la *Sentencia* final declarando Con Lugar la reclamación presentada por la señora Fontán Pérez en cuanto a represalias conforme a la Ley Núm. 115-1991[180], así como la relacionada a la reclamación por vacaciones acumuladas y no liquidadas a tenor con la Ley Núm. 180-1998.[181] En virtud de lo anterior, el foro primario condenó a la parte apelante a pagar a favor de la señora Fontán Pérez: (i) la suma de $40,000.00 dólares por daños y angustias mentales, más $40,000.00 dólares por concepto de penalidad al amparo de la Ley Núm. 115-1991,[182] para un total de $80,000.00 dólares; (ii) la suma de $3,000.00 dólares por concepto de vacaciones acumuladas, que, desglosadas son $1,500.00 dólares por lo anterior más una cantidad igual por la penalidad, de conformidad a la Ley Núm. 180-1998[183]; y, (iii) le impuso a la parte apelante el pago del veinticinco por ciento (25%) del total concedido, por concepto de honorarios de abogados.

En su *Sentencia* final, el TPI realizó once (11) determinaciones de hechos, de las cuales enfatizamos las siguientes:

7. El querellado, Dr. Jaca Montijo CSP y la Administradora, Sra. Lizmarie Burgos, asumieron una actitud hostil y le impusieron un cambio en las condiciones de empleo a la querellante, en represalia, por haberse reportado al Fondo del Seguro del Estado.
8. En su Informe Pericial, el psiquiatra Dr. Fernando Cabrera Delgado llegó a la conclusión que *debido al maltrato laboral y las circunstancias que ella*

---

[180] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

[181] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

[182] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

[183] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*

*(querellante) fue sometida en su trabajo y las condiciones después de su incidente (caída) del 7/25/18 y después de su despido el 12/28/18, desarrolló agravación de su condición con síntomas como pobre autoestima, inseguridad, ansiedad, depresión y poca confianza en ella misma.*

9. Transcurrieron pocos meses desde que la querellante se reportó al Fondo del Seguro del Estado hasta que se produjo su despido.

10. El 28 de diciembre de 2018, Dr. Jaca Montijo CSP le envío [sic] un mensaje de texto a la querellante informándole su despido con efectividad inmediata, sin ofrecer una causa justificada.[184]

*-a-*

El *primer* señalamiento de error va dirigido a la inconformidad de la parte apelante con dos (2) dictámenes emitidos por el foro primario. El *primero* es una *Orden* emitida allá para el año 2020, como paso previo a emitir el *segundo* dictamen, que es una *Sentencia Parcial,* dictada en el mismo año y que, tal y cual adelantamos, es final y firme. Visto lo cual, es claro que habiendo advenido final y firme la *Sentencia Parcial* y que la *Orden* emitida se hizo como paso previo a la misma, este Tribunal no tiene jurisdicción. Con este error, la parte apelante pretende relitigar reclamos ya adjudicados con finalidad. Es de ver, que, dictada la *Sentencia Parcial,* lo único que quedó pendiente fue la determinación de daños.

Este mismo señalamiento de error ya había sido traído ante la consideración de esta Curia y fue resuelto en el caso KLCE202000895. Tal y como resuelto en dicho caso, reiteramos que no tenemos jurisdicción para revisar los dos (2) dictámenes antes mencionados emitidos por el foro primario. Cuando un Tribunal carece de jurisdicción, como sucedió en el caso KLCE202000895, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[185] Como ya hemos mencionado, una de las instancias en

---

[184] Apéndice de la parte apelante, a las págs. 267-268.
[185] 4 LPRA Ap. XXII-B, R. 83. *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero, supra. Yumac Home Furniture v. Caguas Lumber Yard, supra. González v. Mayagüez Resort & Casino, supra.*

que un tribunal carece de jurisdicción es cuando se presenta un recurso tardíamente. Un recurso de revisión tardío es aquel que se presenta fuera del término disponible para ello, y que, consecuentemente, manifiesta la ausencia de jurisdicción.[186] Por tanto, el *primer* error no fue cometido.

*-b-*

En su *segundo* señalamiento de error, el cual tras razonar que juzgar guarda relación al *sexto*, se discutirán en conjunto ya que ambos versan sobre la apreciación de la prueba realizada por el TPI. En ellos, en *primer* lugar, aduce la parte apelante que fue un error del foro primario el haber concluido que la señora Fontán Pérez sufrió actos de represalia consumados por la parte apelante, al amparo de la Ley Núm. 115-1991.[187] Mientras que, en *segundo* lugar, arguye que el TPI incidió al condenar a la parte apelante al pago de vacaciones acumuladas. No le asiste la razón.

Resulta importante puntualizar que, durante la vista, la parte apelante tuvo la oportunidad de contrainterrogar a la señora Fontán Pérez. Como ya hemos destacado, en su Sentencia el TPI realizó once (11) determinaciones de hechos, en particular las determinaciones siete (7) a la diez (10) se relacionan con el *segundo* error en cuestión. Luego de evaluada la TPO, le otorgamos deferencia a las determinaciones de hechos realizadas por el foro primario. Al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de

---

[186] *MMR Supermarket, Inc. v. Municipio Autónomo de San Lorenzo, supra.*
[187] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[188] La apelada estableció un caso prima facie de violación a la ley probando que participó en una actividad protegida, entiéndase, acudir a la CFSE, y que fue subsiguientemente despedida y discriminada en su contra de su empleo.

En lo concerniente a las vacaciones, el TPI luego de celebrada la vista y evaluado el testimonio, ordenó a la parte apelante a pagar a la apelada $3,000.00 dólares, desglosados de la siguiente manera: $1,500.00 dólares por vacaciones acumuladas y no pagadas, más una cantidad igual por penalidad, al amparo de la Ley Núm. 180-1998.[189] Dicha cantidad correspondía a los diez (10) días de vacaciones que la apelada testificó le debían.[190] En su Sentencia, el foro primario emitió dos (2) determinaciones de hechos al respecto:

> 4. La querellante acumulaba licencia por vacaciones.
> 11. Se pasó prueba de la deuda que por vacaciones acumuladas no se le han pagado a la parte querellante.

En efecto, y según se desprende de la TPO, se desfiló prueba sobre este particular durante el juicio en su fondo. Sabemos que la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[191] En lo que respecta al cómputo, este fue realizado por el TPI conforme a lo que dispone el Artículo 9 de la Ley Núm. 180-1998.[192]

---

[188] *González Hernández v. González Hernández, supra. Ramírez Ferrer v. Conagra Foods PR, supra. Rivera y otros v. Bco. Popular, supra. Pueblo v. Irizarry, supra. Pueblo v. Maisonave, supra,* 62-63.
[189] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250 nota *et seq.*
[190] En la TPO a la pág. 29, líneas 15-25 y pág. 30, líneas 1-2.
[191] *Santiago Ortiz v. Real Legacy et al., supra. Meléndez Vega v. El Vocero de PR, supra. Pueblo v. Santiago, supra. Pueblo v. Acevedo Estrada, supra.*
[192] Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, 29 LPRA § 250i, Art. 9.

*-c-*

Continuando, pues, con el *tercer* señalamiento de error, la parte apelante razona que el TPI incidió al no aplicar la inmunidad patronal que le confiere la Ley Núm. 45-1935.[193] No tiene razón. Resulta menester señalar que la situación en este caso no versa sobre una empleada reclamando al patrono, en lugar de a la CFSE. Más bien, se trata de que las actuaciones de la parte apelante le provocaron daños a la señora Fontán Pérez, y si ante esa situación aplica o no la inmunidad patronal. Contestamos dicha interrogante en la negativa.

La Ley Núm. 45-1935 crea una inmunidad patronal absoluta, lo cual significa que el obrero accidentado o lesionado no puede demandar a su patrono por daños y perjuicios sin importar el grado de negligencia atribuible a éste.[194] Es decir, dicha inmunidad patronal no se trata de una defensa personal que tiene el patrono contra las reclamaciones por daños y perjuicios que insten sus empleados accidentados, sino que hay una inexistencia total de una causa de acción contra el patrono por los "accidentes de trabajo" que el CFSE compensa.[195] No obstante, la Ley y sus beneficios no siempre se activan.[196] La posible conducta ilegítima y/o delictiva del patrono no está inmune de una reclamación ordinaria de daños, ya que tal actuación no puede ser razonablemente considerada como una actuación vinculada al desempeño normal del empleo.[197] La legislación y la jurisprudencia del Tribunal Supremo han establecido que la inmunidad patronal no es eximente cuando: (i) **el daño sufrido por el obrero se debe a un acto intencional y/o discriminatorio del patrono**; (ii) cuando el patrono del obrero que

---

[193] Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA § 1 *et seq.*
[194] *López Cotto v. Western Auto*, 171 DPR 185, 193 (2007).
[195] *Id.*, 194.
[196] *Id.*
[197] *Id.*

sufre el accidente en el escenario del trabajo no está asegurado; o, (iii) el patrono demandado hubiera actuado en virtud de doble capacidad o personalidad.[198] (Énfasis suplido.) Así las cosas, el patrono responderá civilmente ante los tribunales e indemnizará al empleado que haya sufrido el "accidente del trabajo".[199]

*-d-*

Por otro lado, en el *cuarto* señalamiento de error, la parte apelante asevera que el foro primario incidió al condenarle a pagar $80,000.00 dólares en daños sin haber deducido a dicha cantidad la suma de $15,923.08 dólares en concepto de la mesada concedida en la *Sentencia Parcial* emitida en este caso. No tiene razón la parte apelante. Veamos.

En su *Sentencia Parcial*, el TPI ordenó a la parte apelante a pagar la suma de $15,923.08 dólares, por concepto de mesada, a tenor con la Ley Núm. 80-1976.[200] Mientras tanto, en su *Sentencia* final, el Tribunal a *quo* ordenó a la parte apelante a pagar a la apelada la suma de $40,000.00 dólares por daños y angustias mentales, más $40,000.00 dólares, por concepto de penalidad al amparo de la Ley Núm. 115-1991,[201] para un total de $80,000.00 dólares. Es decir, las cantidades ordenadas a pagar a la apelada nacen de dos (2) legislaciones distintas y responden a dos (2) tipos de daños distintos. La cantidad en concepto de mesada que dispone la precitada Ley Núm. 80-1976, responde a daños económicos, ya que representa una indemnización correspondiente al sueldo de un mes y una indemnización progresiva adicional equivalente al sueldo de una semana por cada año de servicio. [202] Por otro lado, la

---

[198] *Guzmán y otros v. ELA*, 156 DPR 693, 731 (2002).
[199] *Id.*
[200] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*
[201] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*
[202] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a *et seq.*

cantidad dispuesta por la Ley Núm. 115-1991,[203] responde a los daños sufridos por la apelada debido a las represalias tomadas en su contra por parte del patrono, tras esta haber acudido a la CFSE.

-e-

Finalmente, pasemos al *quinto* señalamiento de error, en el cual la parte apelante alega un error del foro primario tras haber ordenado el pago del veinticinco por ciento (25%) del total concedido, por concepto de honorarios de abogado. Vemos pues, que en este último señalamiento de error que discutiremos, la parte apelante nos invita a concluir que el haber ordenado el pago de un veinticinco por ciento (25%), por concepto de honorarios de abogados, del total concedido en la *Sentencia* fue incorrecto. No le asiste razón. La Ley Núm. 402-1950 dispone que en todo caso radicado por un empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado.[204]

En *Lopez Vicil v. ITT Intermedia, Inc.*, el Tribunal Supremo determinó que:

> [...] establecemos que, de ordinario, la cuantía que podrá recibir el abogado de un trabajador victorioso en una reclamación al amparo de la Ley Núm. 100[-1959], *supra*, será el veinticinco por ciento (25%) de la indemnización base concedida al trabajador.
> Estimamos razonable este por ciento, tomando como punto de partida que la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185a *et seq.*), sobre despido injustificado, establece que cuando el tribunal crea que el despido fue efectuado sin justa causa, éste ordenará al patrono depositar una suma para honorarios de abogado, *no menor del quince por ciento (15%) del total de la compensación del trabajador.* [...]
> [...]

---

[203] Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA § 194 *et seq.*

[204] Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos, Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 LPRA § 3115, Art. 2.

> Entendemos que estimar los honorarios de abogados en un veinticinco por ciento (25%) de la indemnización base, en este tipo de caso, permite que los trabajadores vindiquen sus derechos, a la vez que se compensa justamente a los abogados que invierten su trabajo y esfuerzo en este tipo de reclamación.
> [...]
> [...] A su vez, los tribunales apelativos no intervendrán con la determinación de honorarios realizada en instancia, excepto en casos de abuso de discreción.[205]

Resta indicar que, en el presente caso, evaluado la totalidad del expediente ante nuestra consideración, no pudimos constatar que hubiese un ápice de abuso de discreción en la concesión de los honorarios en este caso. Siendo así, razonamos que no existe razón alguna para intervenir en el curso decisorio del foro primario al imponer los honorarios. Por todo lo anterior, colegimos que el *quinto* error tampoco fue cometido.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada. Con relación a la *Sentencia Parcial* notificada el 7 de mayo de 2020 y la *Orden* notificada el 11 de marzo de 2020, resolvemos que no tenemos jurisdicción para intervenir con dichos dictámenes.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[205] *Lopez Vicil v. ITT Intermedia, Inc.*, 143 DPR 574, 582 (1997).